**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ALLEN D. SHEPHARD, JR.,**

    **Plaintiff,**

v.                                                   **Case No. 8:09-cv-296-T-TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
                                                 /

**O R D E R**

      The Plaintiff seeks judicial review of the denial of his claim for Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

I.

      Plaintiff was forty-nine (49) years of age at the time of his administrative hearing in April 2008.[1] He stands 6 feet, 4 inches tall and weighed 216 pounds according to his administrative filings. Plaintiff has a high school education with a year and a half of college. Plaintiff claimed no past relevant work although administrative filings list work as an inventory clerk and cleaning company laborer. Plaintiff applied for Supplemental Security Income payments in November 2005, alleging disability as of June 1, 1991, by reason of pain

---

[1] A supplemental hearing was conducted in June 2008. (R. 463-68).

in his lower back, weakness in legs, back spasms, right knee aches, ulcer, headaches, and left shoulder pain. The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. Additionally, a vocational expert was called by the ALJ. In essence, Plaintiff testified that he is unable to work due to problems with his right knee, back, left shoulder impingement, and anxiety. He has not worked since he began pursuing disability approximately 15 years ago. Plaintiff indicated that he had been shot twice in the head, and he still has bullet fragments in his head. He gets headaches which sometimes last for a few minutes and other times last for hours and cause moderate pain.

By Plaintiff's account, he can barely lift anything with his left arm and only 6 to 10 pounds with his right arm because lifting on the right puts stress on his low back and knee. He has had low back problems for almost 20 years. Plaintiff has a 20% disability rating from the VA due to a herniation in his back. He is in the process of trying to get his disability rating increased.

Plaintiff had knee surgery in 2000. He estimates he can stand only 20 to 30 minutes before his knee begins to swell, but can stand off and on up to 4 hours. Plaintiff wears a brace on his right knee. He can only sit for 20 minutes before he starts getting aggravated. If he can alternate between sitting and standing, he can last 4 or 5 hours without having to lay down. He lies down for an hour to take the tension off his back and legs. Plaintiff has difficulty reaching forward with his left hand because of pain and weakness in his left shoulder. Even

trying to do so two times an hour would be hard as he cannot hold on to things. His right arm is fine. He also has problems with anxiety and has been treated for PTSD. He has problems remembering. He gets along well with people.

Plaintiff admitted a history of polysubstance abuse. He last used cocaine in 2002. He denied any recent alcohol use, indicating that he was a licensed minister now. He takes aspirin or Tylenol for his various pains. Recently, he was given a supply of Tylenol with codeine.

He puts in about twenty hours a week at the church. As a licensed minister, he helps out and every now and then he gives a sermon. He reads the scriptures to the congregation and leads the prayers. He is not paid for this work. Plaintiff drives once or twice a day although his wife does most of the driving. His wife works and they have three young children at home. He is able to do some household chores including his clothes, making his bed, and taking out the trash. His wife cooks. Based on the incomplete medical record, the hearing was continued. (R. 440-60).

At the next hearing on June 24, 2008, Plaintiff testified briefly that there were x-rays but no recent MRIs on his knees or back. The ALJ next took testimony from Teresa Manning, a vocational expert ("VE"). On the first hypothetical assuming a person of Plaintiff's age and education and capable of a 25-pound lift and 10 pounds repeatedly, needing to sit/stand at will, with only occasional stooping and climbing stairs, but no squatting, kneeling, crawling, climbing ropes, ladders or scaffolds, and limited to doing simple work, the VE opined such person could not do Plaintiff's past type work but could do work as a toll collector, ticket

seller, and parking lot cashier. If such person were limited to only a ten-pound lift, all such work would remain available. While such jobs are classified as light exertional work, each allows for a sit/stand option and require lifting only a few pounds. If such person could only occasionally use the left arm to reach, these jobs would be eliminated. (R. 464-67).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of August 7, 2008, the ALJ determined that while Plaintiff has severe impairments related to a back disorder and knee deformity, he nonetheless had the residual functional capacity to perform a limited range of light exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that although Plaintiff could not perform his past work, he could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 11-17). The Appeals Council considered additional argument from counsel and denied Plaintiff's request for review.

II.

In order to be entitled to Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises a single claim on this appeal. As stated by the Plaintiff, "the Commissioner failed to comply with SSR 96-8P in assessing the Plaintiff's RFC because it did not include limitations with reaching with the left upper extremity, or limitations from headaches." (Doc. 22 at 5). Specifically, Plaintiff references the ALJ's failure to find impairments in his left shoulder and with headaches as severe and to include limitations caused thereby in his RFC assessment. Citing Social Security Ruling 96-8p, Plaintiff urges a remand is warranted because the ALJ failed to include in his RFC assessment "a discussion of why reported symptom-related functional limitations and restrictions can or cannot be reasonably accepted as consistent with the medical and other evidence." He urges that medical evidence reveals left shoulder impingement and treatment for the same and argues that the ALJ should have obtained a medical opinion as to whether the impairment could reasonably produce the pain alleged rather than substituting his own opinion to substantiate that Plaintiff's complaints of pain were not credible. Similarly, as to the testimony and medical evidence regarding Plaintiff's headaches, the ALJ improperly discounted Plaintiff's

alleged complaints when he implicitly indicated that the headache impairments cannot be considered severe when Plaintiff only uses over-the-counter medication to treat the symptoms. Plaintiff urges a remand is appropriate to include medical testimony as to both impairments to determine if the symptoms would preclude Plaintiff from sustaining full-time employment. (Doc. 22 at 5-8).

The Commissioner responds that the ALJ did not err in finding Plaintiff's headaches and shoulder impingement were not severe impairments. Clearly, there is no error at step two of the evaluation process as the ALJ did find other severe impairments and continued the sequential evaluation beyond the second step. Here, the findings by the ALJ concerning the left shoulder and Plaintiff's headaches are supported by the medical evidence. As for the ALJ's credibility finding, the medical evidence and Plaintiff's activities provide support for the ALJ's discrediting Plaintiff's subjective complaints. Because the ALJ's decision is supported by substantial evidence, the Commissioner submits the decision that Plaintiff was not disabled must be affirmed. (Doc. 23 at 4-13).

After an independent review of the whole of Plaintiff's medical record, I find no error in the failure of the ALJ to include functional limitations in his RFC assessment related to Plaintiff's left shoulder impingement or his headaches.[2] A fair reading of the decision likewise indicates that the ALJ adequately complied with the provisions of SSR 96-8P, setting

---

[2] Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. §§ 404.1545(a), 416.945(a). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440.

7

forth his review of the medical evidence and his rationale for decision.[3] In short, neither the objective medical record nor the clinical findings by any provider reveal any limitations arising from or directed by the provider in connection with these conditions. Significantly, Plaintiff makes no demonstration of any limitation from either condition which the ALJ should have considered.

The medical records from Tampa V.A. Medical Center (V.A.) support generalized complaints of shoulder pain and a minor left shoulder impingement. However, treatment, when provided, has been conservative, and I can find no instance when any doctor has imposed restrictions for the condition.[4] Plaintiff's claim that he dropped things with his left hand because of the condition nowhere appears in these records. As the Commissioner urges, the mere presence of this condition alone absent proof of resultant functional limitations is not sufficient to establish a severe impairment. Here, the medical record does not reveal any functional limitations which the ALJ was obliged to consider but did not. While Plaintiff

---

[3]Social Security Rulings are agency rulings issued to clarify regulations and policy and are binding on all components of the Administration. *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990). Such rulings are not binding on this court, however, they are accorded deference. *See Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994); *B.B. ex. rel. A. L. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981).

[4]The objective evidence, both x-ray and MRI evidence, confirms degenerative changes in the left acromioclavicular joint, but little else. X-rays in 2005 and 2008 reveal no evidence of fracturing, sublaxations or destructive bony lesions and no soft tissue calcifications. *See* (R. 130, 118-19, 137). An MRI in June 2006 revealed moderate AC joint hypertrophy with impingement of the rotator cuff. No fractures were noted. Muscles and tendons were intact and there was no evidence of full or partial thickness rotator cuff tear. There was mild distal supraspinatus tendonosis. (R. 137). V.A. treatment notes indicate care was conservative, through pain medicine or occasional injections. Plaintiff reported good results from these shots.

8

testified to daily headaches, there is very limited medical evidence to support the same. Nothing in the objective record reveals a medical explanation for such condition nor any functional limitations by reason of that condition.[5] Thus, the objective evaluation of Plaintiff's spine focused on the lumbar and thoracic spine and appears wholly unrelated to any claim of headaches. In any event, the record revealed only mild degenerative changes in the lumbar spine and a normal thoracic spine. A June 2000 CT scan of the head was unremarkable.[6] Nowhere does the record reflect clinical findings related to the alleged headaches, any significant treatment for the claims of headaches, nor any limitations in relation to the condition. By my review, the medical record supports the decision that neither of these conditions imposed functional limitations affecting Plaintiff's RFC.

As the decision reflects, it was reached in a manner consistent with the dictates of SSR 96-8P. In reaching his RFC assessment, the ALJ considered the medical record and the import of the same on Plaintiff's functioning. In doing so, the ALJ expressly recognized Plaintiff's complaints of left shoulder impingement, problems reaching forward with the left arm, and headaches. (R. 14). In assessing the medical record regarding these conditions, the ALJ noted the "plethora of objective tests" given by the V.A., and the results of that testing. (R. 14-15). The ALJ further noted the results of the consultative examination by Dr. Edwin

---

[5]A review of the V.A. records reflects practically nothing to support the claim of headaches apart from an occasional reference to head injury by history. (R.117-328). Florida Department of Correction records from 1998 reflect Plaintiff's report of head injury and his occasional complaints of headaches. (R. 347, 353, 380, 385-87, 394, 396-98, 401, 407, 409, 411, 415, 430, 432). When quantified, these headaches were occurring two to three times a week. When described, they are described as tension type headaches.

[6]*See* (R. 132, 138, 141, 143, 144, 145, 153-54, 158, 168 ).

Lamm, M.D., and the reports from the state agency reviewing doctors. (R. 16). As for the opinion evidence, the ALJ gave substantial weight to the assessment by Dr. Lamm who found some limitations in the right knee but otherwise, "no significant limitations in [Plaintiff's] back (or elsewhere) that would prevent him from doing most types of work." (R. 337-39). The ALJ also considered Plaintiff's statements about what he could do functionally and his rather active daily activities at home and at the church. Thus, consistent with SSR 96-8P, the decision reveals the ALJ's evaluation of the medical record as a whole, Plaintiff's impairments, the limitations imposed by the same and the conclusion that neither Plaintiff's shoulder impingement nor his alleged headaches would interfere in any significant way in his ability to do basic work activities. Corresponding functional limitations were simply not revealed in the record nor required for inclusion in the RFC and such is adequately explained by the decision. The cited ruling does not require more. Again, it is significant to this appeal that Plaintiff does not now demonstrate any functional limitations which should have been included in the RFC by reason of these conditions but were not.

      As for the ALJ's credibility finding, case law dictates that where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). Here, the decision reflects the conclusion that while Plaintiff had impairments which could reasonably be expected to produce his alleged symptoms, the pain complaints were overstated to the extent he claimed to be wholly disabled

thereby. As this conclusion relates to the left shoulder pain and the alleged headaches, it must be read in the context of the ALJ's conclusion that neither was a severe impairment and the lack of medical support to the contrary. It also must be considered in light of the Plaintiff's testimony concerning his functional capacity and his relatively active daily activities at home and at the church. In that light, the decision adequately reveals why the whole of Plaintiff's impairments were found not to impose disabling pain or to prevent a limited range of light exertional work. This aspect of the decision is rendered consistent with the applicable standard and the cited ruling as well.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 13th day of September 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record